# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| CHARLIE BLAKE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CV412-306 |
| UNION CAMP INTERNATIONAL PAPER, | ) ) ) | |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

In this ERISA case[1] plaintiff Charlie Blake, who is proceeding *pro se*, alleges that he has been wrongfully denied retirement benefits by his former employer, defendant Union Camp International Paper ("Union Camp"). (Doc. 1 at 3.) Presently before the undersigned is Union Camp's motion for summary judgment. (Doc. 37.)

---

[1] Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001, *et seq*

## I. LEGAL STANDARD

ERISA benefit denial cases present courts with unique considerations, therefore the standard summary judgment considerations do not apply. *Zorn v. Principal Life Ins. Co.*, 2010 WL 3282982 at * 5 (S.D.Ga. Aug. 18, 2010) ("courts use 'trial-on-paper' and thus Fed.R.Civ.P. 52/56 variants . . . . [so] the parties . . . present their information nominally through Rule 56 motions, but the Court will not use factual inferences in either side's favor."); *Hert v. Prudential Ins. Co.*, 650 F. Supp. 2d 1180 (M.D. Fla. 2009). Since ERISA does not expressly set forth the appropriate standard of review for actions challenging benefit eligibility determinations, district courts examine the plan documents to determine the applicable standard of review. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). In the past, the Eleventh Circuit has directed district courts to follow a "well-defined series of steps" in reviewing a decision to deny disability benefits in an ERISA case. *Tippitt v. Reliance Std. Life Ins. Co.*, 457 F.3d 1227, 1231–32 (11th Cir. 2006). District courts are to utilize the following six-step analysis in reviewing an administrator's benefits decision:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court

2

disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011) (citing *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1137–38 (11th Cir. 2004), *overruled on other grounds by Doyle v. Liberty Life Assurance Co.*, 542 F.3d 1352 (11th Cir. 2008)). As to the sixth step in this analysis, the Eleventh Circuit eliminated the heightened standard of review applicable when a conflict of interest is present. *Doyle*, 542 F.3d at 1360. A pertinent conflict of interest exists where the ERISA plan administrator both makes eligibility decisions and pays awarded benefits

3

out of its own funds. *Id.* Even where a conflict of interest exists, courts still "owe deference" to the plan administrator's "discretionary decision-making" as a whole. *Id.* (internal quotations omitted). The claimant bears the burden of proving that he is entitled to benefits. *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998).

## II. ANALYSIS

Blake insists that he became 100% vested in his "accrued benefits" and was set to "receive a pension at the age of retirement" once he accumulated five years of service. (Doc. 49 at 3.) He worked at Union Camp from 1973 until 1980. (*Id.*) Thus, he reasons, his pension was assured. Under the unambiguous terms of Union Camp's retirement plan documents, however, he was required to have *ten* years of service for his retirement benefits to vest.[2] (Doc. 37 at 2.) As he only had seven-and-a-half years of service, he simply was not entitled to a pension. Hence,

---

[2] In 1974 Blake's union negotiated a reduction in the vesting term from fifteen to ten years. (Doc. 40-1 at 279.) The 1978 hourly employee retirement plan reflected the change, explaining that benefits did not vest for hourly employees until at least ten years of continuous service. (Doc. 43-1 at 14.) No changes were noted during negotiations in 1980. (Doc. 40-1 at 231-32.) Under a 1985 amendment, the vesting period remained at ten years of continuous service for hourly employees. (Doc. 44-1 at 64.)

4

under the *de novo* standard of review, Blake's claim as to pension benefits fails.

He also claims that he was invested in a workplace Roth IRA and 401(k) plan. (Doc. 49 at 9-10, 15.) Roth IRAs, however, did not exist until Congress passed the Taxpayer Relief Act of 1997, Pub. L. 105-34. And at the time Blake worked at Union Camp, traditional IRAs were restricted to individuals who were *not* part of employment-based retirement plans, a rule Congress did not change until after Blake left the company. *See* Sarah Holden, et al., *The Individual Retirement Account at Age 30: A Retrospective*, Perspective, February, 2005, *available at* http://www.ici.org/pdf/per11-01.pdf (last visited June 18, 2014). Similarly, while 401(k) plans were possible in 1978, no 401(k) plan was actually established until 1980, the year Blake left Union Camp. Alyssa Fetini, *A Brief History of: The 401(k)*, Time, Oct. 16, 2008, *available at* http://content.time.com/time/magazine/article/0,9171,1851124,00.html (last visited June 18, 2014); Tom Anderson, *Your 401(k): When it was Invented -- and Why*, LearnVest,

*available at* http://www.learnvest.com/knowledge-center/your-401k-when-it-was-invented-and-why (last visited June 18, 2014).[3]

Assuming that Blake meant to refer to some similar retirement vehicle available from Union Camp in that era, he has failed to back up that claim with any useful evidence. His *only* non-testimonial evidence, which comes from outside the ERISA record, is a late-filed W-2 which is largely unreadable. Blake insists that an "x" on that document shows that he contributed to the Public Employees Retirement Association ("PERA") pension plan. (Doc. 53 at 9.) Given that he was not a public employee, that interpretation of the form is questionable. The Court accepts for present purposes, however, that an "x" was placed in Box 13 of the W-2, indicating that Blake was an "active participant" in some sort of workplace retirement plan. If it reflects the workplace pension, "active participant" does not mean "vested participant." *See* IRS Notice 87-16 ("Active participant status is determined without regard to vesting."). If

---

[3] He also claims that these accounts must, by now, contain somewhere in the "million [dollar] range," and may even amount to $2.5 million. (Doc. 49 at 17.) His IRS records show that he earned a grand total of $63,676 during the years he worked for Union Camp (assuming that all of those earnings were attributable to that employment). (*Id.* at 21.) Clearly, if Blake had contributed as much as 20% of his income to a retirement account, only a fanciful rate of return would have yielded the millions that he imagines.

it represented some other form of work-place retirement program, the W-2 is so non-specific as to be entirely useless.

Blake's only evidence is an inconclusive W-2 statement and a nonsensical accounting of his missing millions in affidavit form.[4] The ERISA record, however, shows that Blake's pension benefits never vested. He has failed to offer admissible evidence creating a disputed issue of fact on this critical point. *See, e.g., Denney v. City of Albany*, 247 F.3d 1172, 1191 n. 10 (11th Cir. 2001) (in considering a summary judgment motion, a court may only consider evidence that is admissible or that could be presented in an admissible form); *Macuba v. DeBoer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999) (recognizing that inadmissible hearsay cannot be considered on a motion for summary judgment unless it can be reduced to

---

[4] Blake insists that Union Camp is refusing to hand over additional documents supporting his assertions (doc. 49 at 15), but the defendant represents that it has handed over the entire ERISA record. (Doc. 51 at 3.) It insists that no additional responsive documents exist, and Blake has furnished no evidence that calls that assertion into question.

In that regard, Blake has moved to compel production of relevant documents. (Doc. 35.) Not only is the motion untimely under the scheduling order, but that order (doc. 28) limited Blake to the administrative record, as is typical of these cases. *See Zorn*, 2010 WL 3282982 at * 4. He also failed to certify that he made a good faith effort at resolving the dispute with opposing counsel. S.D. Ga. LR 26.5(c) ("Counsel are reminded that Fed. R. Civ. P. (26(c) and 37(a)(2) require a party seeking a protective order or moving to compel discovery to certify that a good faith effort has been made to resolve the dispute before coming to court."). For all of those reasons, Blake's motion to compel (doc. 35) is **DENIED**.

admissible evidence at trial). He similarly fails to offer any evidence suggesting his enrollment in any other retirement program. Applying the *de novo* review standard, the Court concludes that the claim administrator's benefits denial was not "wrong." Hence, the inquiry ends in defendant's favor.

## III. CONCLUSION

For all of the reasons explained above, defendant's summary judgment motion (doc. 37) should be **GRANTED** and this case should be **DISMISSED**.

**SO REPORTED AND RECOMMENDED** this 20Th day of June, 2014.

*/s/ M. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA